Jerry N. YEE, Plaintiff-Respondent,

v.

Frank GUIFFRE, Sr., Defendant-Appellant,†

JAMES T. BARRY CO., INC., Defendant.

Court of Appeals

*No. 92–0594. Submitted on briefs February 3, 1993.—Decided March 16, 1993.*

(Also reported in 499 N.W.2d 926.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Martin J. Greenberg & Associates* by *Martin J. Greenberg* and *Joe A. Goldberger*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Kasdorf, Lewis & Swietlik, S.C.* by *Vicki L. Arrowood* and *Werner E. Scherr*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Frank Giuffre, Sr. appeals from a judgment in favor of Jerry N. Yee following a bench trial in which the trial court determined that Giuffre was liable to Yee for $89,292.77 based upon breach of contract. Giuffre also appeals from an order denying his motion for reconsideration.

Giuffre asserts trial court error on a matter of law in its interpretation of the "failure to close" section of an Offer to Purchase executed by Giuffre for a piece of property owned by Yee. Because we conclude that the clear language of the contract allows Yee to pursue alternative remedies, notwithstanding the fact that he retained the earnest money deposit, we affirm the trial court.

## I. BACKGROUND

On October 17, 1989, Giuffre tendered an Offer to Purchase to Yee for the purchase of a parcel of real estate located at 9545 South 20th Street, Milwaukee. Six days later, Yee tendered a counter-offer changing the purchase price from $250,000 to $349,000. Shortly thereafter, Giuffre countered Yee's counter-offer changing the purchase price to $302,000, and extending the time in which to satisfy a contingency set forth in the original Offer to Purchase. Giuffre's counter-counter-offer was ultimately accepted by Yee on October 27, 1989. As earnest money, Giuffre tendered a check for $5,000.

The Offer to Purchase required a closing of the transaction on or before December 1, 1989. The transaction did not close as scheduled. On January 4, 1990, Yee, by his attorney, Werner E. Scherr, demanded that the earnest money, then held by James T. Barry Co., Inc., a real estate brokerage firm, be disbursed to Yee as "partial payment for specific performance."[1]

On January 11, 1990, Yee filed suit against Giuffre and James T. Barry Co., Inc. The complaint alleged that a breach of contract had occurred, and pled alternative remedies—specific performance and damages. In answering the complaint, Giuffre denied that a breach of contract had occurred and affirmatively asserted a right to terminate the contract. Giuffre subsequently amended his answer, affirmatively asserting

---

[1] Yee argues in his brief that this letter is not part of the record and therefore should not be considered by this court in its decision-making process. Our review of the record, however, indicates that the letter is indeed part of the record as it was received into evidence with the deposition testimony of Brian Hinners.

that he had rescinded the contract. Giuffre also asserted a counterclaim alleging that Yee had failed to mitigate his damages.

The trial began on February 28, 1991. At the start of the trial, Yee advised the trial court that he was abandoning the remedy of specific performance and was pursuing only damages.[2] Due to unforeseen circumstances, the trial was delayed until December 9, 1991. On that date, the trial court scheduled a motion to be heard regarding Giuffre's request to amend his pleadings to assert a liquidated damages clause defense. The trial court denied the motion and subsequently decided that Giuffre had breached the contract and was liable to Yee for $89,292.77 plus costs and disbursements.

On January 17, 1992, Giuffre petitioned the trial court for a reconsideration of its December 9, 1991 decision. The trial court denied the motion by written order of January 29, 1992. Giuffre now appeals.

## II. DISCUSSION

Both parties agree that the sole issue on appeal involves the interpretation and application of the language of the Offer to Purchase to the facts presented by the evidence. The interpretation of a contract presents a question of law that this court reviews independently of the trial court's decision. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Where an agreement contains unambiguous contractual language, that language must be enforced as

---

[2] Before the trial commenced in February, Yee was able to sell the property in question to a third party for approximately $265,000. The trial court properly concluded that under the circumstances, Yee's mitigative actions were appropriate.

written. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702-03 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). Contractual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt*, 156 Wis. 2d at 427, 456 N.W.2d at 656.

The language of the Offer to Purchase that is in dispute reads as follows:

> If the transaction fails to close and the parties fail to agree on the disposition of earnest money, then earnest money held by broker shall be discharged as follows:
>
> 1. To Buyer, unless Seller notifies Buyer and broker in writing no later than 15 days after the earlier of the Buyer's written demand for return of the earnest money or the date set for closing, that Seller elects to consider the earnest money as liquidated damages or partial payment for specific performance.
>
> 2. To Seller, subject to amounts payable to broker, provided the above notice is given and neither party commences a lawsuit on this matter within 30 days after receipt of the notice.
>
> In making the disbursement, Broker shall follow procedures in Section RL 18.09(4), Wis. Adm. Code.
>
> Disbursement of earnest money does not determine the legal rights of the parties in relation to this agreement.

Giuffre argues that Yee's letter to James T. Barry Co., Inc., requesting that the earnest money held by the broker be disbursed to Yee as "partial payment for specific performance," resulted in an irrevocable election of remedies, i.e., specific performance. Giuffre further posits that, once having stated his intention to pursue his remedy in terms of specific performance, Yee is barred from changing his desired remedy to one of

damages. Finally, Giuffre contends that by selling the property to a third party before resolution of the lawsuit, Yee deprived Giuffre of his equitable rights in and to the property. In so doing, Yee made an action for specific performance impossible and unilaterally chose retention of the earnest money as the sole remedy, i.e., liquidated damages.

In contrast, Yee argues that the contract clearly and unambiguously states that the "[d]isbursement of the earnest money does not determine the legal rights of the parties in relation to this agreement." Thus, Yee contends that the "failure to close" language is directed to the broker and specifies to whom the down payment will be disbursed, not to the choice of remedies available to the parties to the contract. We agree with Yee's interpretation of the contract.

In the present case, Yee pled alternative theories of recovery—specific performance and actual damages.[3] At trial, Yee informed the court that due to the fact that he had sold the property in the interim, he would abandon the remedy of specific performance and pursue damages only. The course that Yee chose to follow was approved by the supreme court in *Pierson v. Dorff*, 198 Wis. 43, 52-53, 223 N.W. 579, 581 (1929), wherein the court held:

> From the foregoing it conclusively appears that the equitable remedy for specific performance and the legal remedy to recover damages are not inconsistent, especially where the action to recover

[3] Both parties agree that Wisconsin courts recognize that an action for specific performance is among the alternative remedies that may be chosen by a seller in seeking recovery based upon a breach of a contract to purchase. *See, e.g., Moritz v. Broadfoot*, 35 Wis. 2d 343, 151 N.W.2d 142 (1967).

damages is prosecuted after the abandonment of a plea for specific performance.

██

More important to our resolution of the case, however, is the language of the Offer to Purchase that specifically states that "[d]isbursement of the earnest money does not determine the legal rights of the parties in relation to this agreement." We conclude that this portion of the Offer to Purchase is not "reasonably or fairly susceptible of more than one construction." *See Borchardt*, 156 Wis. 2d at 427, 456 N.W.2d at 656. It states plainly and unequivocally that earnest money disbursement, following a failure to close by either party, does not effect the parties' legal rights. Thus, notwithstanding the fact that he retained the earnest money deposit following Giuffre's failure to close, Yee's choices of remedy for an alleged breach of contract were not constrained to those delineated in the "failure to close" portion of the Offer to Purchase.

*By the Court.*—Judgment and order affirmed.